STATE

v.

**Robert DYER.**

**No. 2000–466–C.A.**

Supreme Court of Rhode Island.

Jan. 17, 2003.

Aaron L. Weisman, Providence, for Plaintiff.

Catherine A. Gibran, Paula Rosin, Jan-·ice M. Weisfeld, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, FLANDERS, and GOLDBERG, JJ.

## AMENDED OPINION

LEDERBERG, Justice.

The defendant, Robert Dyer, has appealed a judgment of conviction on one count of burglary and two counts of assault with a dangerous weapon. The defendant argued on appeal that the trial justice erroneously admitted irrelevant and inflammatory evidence and erroneously denied his motion for new trial or, alternatively, his motion for a judgment of acquittal. For the reasons stated below, we affirm the judgment and deny and dismiss this appeal.

### Facts and Case History

At trial, defendant's estranged wife, the complainant in this case, testified that at approximately 11:20 p.m. on May 28, 1997, she was lying in bed watching television, when she heard "what [she] thought was sawing, someone sawing something." Disregarding this sound as a product of paranoia, she decided not to call the police and resumed watching television. A few minutes later, she saw defendant making his way up the stairs with a knife in his teeth. She jumped up to close her bedroom door, but did not move quickly enough to prevent defendant from entering, whereupon he began hitting her in the face and stabbing her. The complainant testified that she began screaming and heard her nine-year-old daughter, whom we shall refer to as Amy, cry out from the bedroom she shared with her two-year-old sister, "Leave my mother alone." According to the complainant's account of the incident,

defendant then hit her on the forehead with a hammer and threw her down the stairs.

The complainant's neighbors, Kevin and Shawn Andrews (Mr. Andrews and Mrs. Andrews, respectively), who lived next door in the side-by-side duplex dwelling, corroborated her testimony. Mr. Andrews testified that when he saw defendant standing outside the house that evening, he called 911, then heard a loud crash on the wall that adjoins both apartments and heard the complainant screaming for help. Mrs. Andrews testified that she heard the complainant's screams, and after she saw defendant run away from the house, she went to the entrance of her neighbor's apartment. According to Mrs. Andrews, the door to the complainant's apartment was open and the complainant was "lying on the floor at the bottom of the stairs all bloody." Mrs. Andrews also called 911.

The defendant subsequently was arrested and indicted on one count of burglary (count 1) and three counts of assault with a dangerous weapon. The first assault count (count 2) charged the use of a knife in a dwelling house with intent to murder. The second assault count (count 3) charged the use of a hammer in a dwelling house with intent to murder. The third assault count (count 4) charged the use of hands and stairs as a dangerous weapon. At the close of the state's evidence, the trial justice granted defendant's motion for a judgment of acquittal on count 4. The trial proceeded on the remaining three counts, following which a jury found defendant guilty of one count of burglary and two counts of assault with a dangerous weapon with intent to murder. The defendant was sentenced to consecutive terms of thirty years on the burglary count with fifteen years to serve and fifteen years suspended with probation, and ten years on each assault count with five years to serve and

five years suspended with probation. The defendant has appealed the judgment of conviction entered on counts 1 and 3.

**Objection to Complainant's Testimony**

█ The defendant argued on appeal that during defense counsel's cross-examination of the complainant, the trial justice erred in sustaining the prosecution's objection to questions about why Amy was not presented as a testifying witness. The defendant contended that later the state was permitted to ask a similar question during its redirect examination that resulted in the admission of irrelevant testimony about Amy's absence. Moreover, even if the evidence was relevant, defendant argued, its prejudicial effect far outweighed its probative value, thereby rendering the inquiry inadmissible under Rule 403 of the Rhode Island Rules of Evidence. We reject both of these arguments.

Rule 401 of the Rhode Island Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 402 of the Rhode Island Rules of Evidence allows all relevant evidence to be admitted into evidence unless otherwise provided by constitution, law, or rule. Relevant evidence can be excluded pursuant to Rule 403, however, if its admission creates unfair prejudice, confusion of the issues, misleads the jury, or is simply redundant. This Court consistently has held that "determinations of relevance and prejudice are within the sound discretion of the trial justice, and such determinations will be upheld absent a showing of abuse of this discretion * * *." *DiPetrillo v. Dow Chemical Co.,* 729 A.2d 677, 692 (R.I.1999).

In this case, defendant based his claim of error on the following exchange in

which the trial justice sustained the prosecution's objection to defense counsel's cross-examination of the complainant about Amy's absence:

> "[DEFENSE COUNSEL] Now you testified here today that at some point [Amy] came out of the room, and she's nine years old, correct?
>
> "[COMPLAINANT] I testified that I heard [Amy] screaming for him to leave me alone. I did not see her come out of the room.
>
> "[DEFENSE COUNSEL] At any time did the police at all interview her?
>
> "[COMPLAINANT] I don't know.
>
> "[DEFENSE COUNSEL] After what—
>
> "[COMPLAINANT] I don't know.
>
> "[DEFENSE COUNSEL] *Is she a witness here?*" (Emphasis added.)

By sustaining the prosecution's objection to this question, the trial justice prevented defendant from probing the reasons for Amy's absence. The trial justice, however, later permitted the prosecution, on redirect examination, to ask complainant:

> "[PROSECUTOR] Now, when you spoke with me about the case, we talked about whether or not [Amy] would be giving a statement or testifying, is that accurate?
>
> "[COMPLAINANT] Yes, we did.
>
> "[PROSECUTOR] And [complainant], what did you decide?"

The trial justice overruled the defense counsel's objection to this last question and complainant testified that:

> "I expressed to you that I did not want her to testify, and that if you wanted her to testify that I wouldn't testify. Because I don't want her to go through this again."

The defendant argued that the complainant's answer to the prosecution's question was not relevant, evidenced by the trial justice's initial ruling that barred defense counsel from delving into that topic. Although the trial justice's limitation of defense counsel's cross-examination could suggest that testimony concerning Amy's absence was not relevant, it is our opinion that the trial justice properly determined that defendant's cross-examination opened the door to the previously unexplored area of why Amy was not testifying. As the trial justice correctly observed, defendant's line of questioning left the impression that "[Amy] is not here and she's hiding something." By drawing the jury's attention to the "empty chair," defendant implied that, if Amy testified, her statements would adversely affect the prosecution. *State v. Small,* 735 A.2d 216, 217 (R.I.1999) (mem.). Therefore, the trial justice's ruling on defendant's objection was reasonably calculated to avoid misleading the jury and did not constitute an abuse of discretion.

The defendant further argued that, assuming that this evidence was relevant, it nonetheless should have been excluded because its probative value was "substantially outweighed by the danger of unfair prejudice." R.I.R.Evid. 403. The probative value of complainant's testimony, however, is evidenced by the fact that its admission resolved the potentially misleading line of questioning initiated by defendant. Although there exists no precise formula for determining the prejudicial effect of a statement, we " 'evaluate its probable effect upon the outcome of the case by examining the remark in its factual context and determining whether this remark reasonably tended to increase' the probability of an issue of fact or law that is of consequence to the outcome of the case." *State v. Ortiz,* 609 A.2d 921, 929 (R.I.1992) (quoting *State v. Pugliese,* 117 R.I. 21, 26, 362 A.2d 124, 126–27 (1976)). In this case,

there is no basis for defendant's assertion that the complainant's testimony affected the outcome of the case by evoking sympathy for a traumatized child and her protective mother, while inspiring antipathy for defendant. Given complainant's testimony about the assault and the extent of her injuries and given that the prosecution already had established that Amy witnessed a violent attack on her mother, it is highly unlikely that complainant's explanation of Amy's absence produced any prejudice to defendant or improperly influenced the jury. Therefore, we conclude that the trial justice did not abuse his discretion by admitting this testimony.

## Motion for New Trial

■ The defendant's second argument on appeal is that the trial justice erroneously denied his motion for a new trial on counts 1 and 3 because the trial justice independently reached conclusions different from those of the jury and because both verdicts were against the weight of the evidence and failed to do substantial justice.

■ This Court will affirm the trial justice's decision on a motion for a new trial unless it is "clearly wrong or unless the trial justice, in reviewing the evidence, overlooked or misconceived relevant and material evidence." *State v. Jackson*, 752 A.2d 5, 12 (R.I.2000) (quoting *State v. Doctor*, 690 A.2d 321, 329 (R.I.1997)). When considering a motion for a new trial, a trial justice acts as "a thirteenth juror and exercises independent judgment on the credibility of witnesses and on the weight of the evidence." *Id.* at 11 (quoting *State v. Banach*, 648 A.2d 1363, 1367 (R.I.1994)). This Court has consistently held that, in so doing, the trial justice must first consider the evidence in light of the charge to the jury, then determine his or her own opinion of the evidence, and, finally, determine

whether he or she would have reached a different result than that of the jury. *Id.* at 11–12. If the trial justice reaches the same determination as did the jury, or if the justice determines that reasonable minds could have differed in reaching the verdict, the motion for a new trial should be denied. *Id.* at 12. A trial justice may grant a motion for a new trial upon determining that (1) he or she would have reached a different result than the jury reached and (2) the verdict is against the fair preponderance of the evidence and fails to do substantial justice. *State v. Girouard*, 561 A.2d 882, 891 (R.I.1989).

With respect to count 1, the burglary count, the trial justice properly executed the motion for a new-trial analysis. He correctly reviewed the crux of the burglary charge as articulated in his jury instructions, stating "if [defendant] had any legal right to that apartment, then he cannot be convicted of a crime of burglary." The trial justice then summarized complainant's testimony, indicating that defendant wrongfully had entered complainant's apartment, and noting that she maintained a separate apartment, that the locks were changed to bar defendant from entering complainant's dwelling, and that defendant kept no toiletries or clothes in complainant's apartment proper, other than those stored in the cellar along with his tools. Having reviewed the record, we conclude that the trial justice adequately "set out in some reasonable manner the material factual evidence * * *, direct or circumstantial, upon which his or her ruling is based." *State v. Vorgvongsa*, 670 A.2d 1250, 1252 (R.I.1996).

Furthermore, we are satisfied that the evidence was sufficient to support beyond a reasonable doubt a finding that defendant did not have permission to enter complainant's apartment that evening and that he entered with the intent to kill her. *See*

*State v. Contreras–Cruz,* 765 A.2d 849, 852 (R.I.2001) (quoting *State v. Hudson,* 53 R.I. 229, 230, 165 A. 649, 650 (1933) (defining burglary as "the breaking and entering the dwelling-house of another in the nighttime with the intent to commit a felony therein, whether the felony be actually committed or not")). At the time of the burglary, defendant maintained his own apartment and had not lived with the complainant for roughly one year. Although defendant did have a key to the complainant's apartment, he did not have an unlimited right of entry because his use of the key was restricted to his entry when he babysat for their children.[1] Moreover, the complainant revoked any consent to his use of that key when she changed the locks. In fact, on the night of the burglary, defendant forced entry through a window that the complainant had nailed shut.

There is also ample evidence in the record to support the jury's finding that defendant intended to commit a felony on the premises; specifically, that he struck the complainant with intent to kill. The defendant struck her head three times, allegedly with a hammer, with sufficient force to leave a scar on the top of her head. The defendant repeatedly told the complainant that "tonight is the night you're going to die" and threatened to "hit [her] with this hammer and knock [her] out and take [her] downstairs and kill [her]." The testimony of the treating emergency-room physician that the complainant lost consciousness and suffered various "head contusions" corroborated the force of defendant's assault.

The defendant's appeal from the denial of his motion for a new trial on count 1

stressed that the trial justice stated that he "might disagree with" the jury's verdict. Notwithstanding those words, however, the trial justice explicitly found that the complainant was a credible witness and that he could not "find fault with the jury in believing her that it was this defendant who did break and enter her dwelling house in the nighttime hours with the specific intention to commit a felony therein." Thus, the trial justice concluded that reasonable minds could differ in reaching that verdict. As this Court has made clear, when a trial justice finds that "the evidence is balanced or that reasonable minds could differ, then the motion for a new trial must be denied," *State v. Luanglath,* 749 A.2d 1, 4 (R.I.2000), and the trial justice correctly did so in this case.

The trial justice's treatment of defendant's motion for a new trial on count 3, the assault with a hammer charge, was similarly thorough. The trial justice believed the complainant's account of defendant entering her apartment and striking her repeatedly. The defendant correctly points out that the trial justice stated that he was not "personally * * * persuaded beyond a reasonable doubt that the use of the hammer was with the intent to commit murder" because of the lack of medical corroboration for some of complainant's account of the hammer attack. The trial justice, however, also concluded that "reasonable minds could differ. * * * [T]he evidence was of such a nature that this jury was justified in reaching that conclusion even though I might have reached a different conclusion." Such evidence includes testimony that defendant repeated-

---

1. The record contains the transcript of a sidebar discussion of the issuance of a restraining order against defendant following a domestic assault that occurred a few days before the incident in the case at bar. The trial justice, however, did not admit evidence of this restraining order because the order had not been served on defendant, and the domestic assault charge was not consolidated with this prosecution.

ly struck complainant with a hammer and threatened to kill her.[2]

The defendant contended that the trial justice, after reaching conclusions different from the jury, was required to consider whether the verdict was against the fair preponderance of the evidence and failed to do justice. Although we have held that, "[a] new trial may be subsequently granted if the trial justice has reached a different conclusion from that of the jury and if it is specifically found that the verdict is against the fair preponderance of the evidence and fails to do substantial justice," *State v. Dame*, 560 A.2d 330, 333 (R.I. 1989), defendant has overlooked that we also have clearly held that "[t]he new-trial motion must be denied, however, if the trial justice finds that the evidence is balanced or reasonable minds could differ." *Id.* In this case, the trial justice found reasonable minds could differ and thus properly denied defendant's motion for new trial.

Therefore, our review of the record leads to our conclusion that the trial justice properly summarized the evidence supporting the jury's conviction of defendant on both counts, and that he did not overlook or misconceive material evidence. Although the trial justice conceded that he did not completely agree with the verdict, he ultimately concluded that reasonable minds could differ and provided sufficient analysis to support his decision. Furthermore, there was ample and sufficient evidence to support defendant's conviction be-

yond a reasonable doubt on both counts. Therefore, the trial justice correctly denied defendant's motion for a new trial on counts 1 and 3.

### Motion for Judgment of Acquittal

The defendant's final claim of error was that the trial justice erred in denying defendant's motion for judgment of acquittal, specifically that the convictions entered on counts 1 and 3 were not supported by sufficient proof beyond a reasonable doubt. With respect to count 1, defendant argued that the evidence did not support a finding beyond a reasonable doubt that defendant lacked the right to be on the premises. As to count 3, defendant relied on the trial justice's remark that he did not believe defendant wielded the hammer with intent to kill as proof that the evidence was insufficient to support his conviction.

In reviewing a defendant's claim of legal insufficiency of the evidence in the context of a motion for a judgment of acquittal, this Court applies the same standard as a trial justice; we "view the evidence in the light most favorable to the state, * * * giving full credibility to the state's witnesses, and draw therefrom all reasonable inferences consistent with guilt." *State v. Otero*, 788 A.2d 469, 475 (R.I.2002) (quoting *State v. Snow*, 670 A.2d 239, 243 (R.I.1996)). We have held that a judgment of acquittal analysis "requires less in the way of evidence than the standard applicable to a motion for a new trial." *State v. Kaba*, 798 A.2d 383, 394

2. The complainant's emergency room records reflected the severity of this assault and provided evidence of defendant's intent to kill. These records described the complainant's injuries on arrival as multiple left upper extremity and lower extremity stab wounds, a concussion, blunt trauma to the head and chest, head contusion, multiple facial bruises, and minor facial lacerations. The records also noted that she complained of pain and a de-

crease in sensation in her left upper extremity, and that a cervical collar was in place. The operating room physician's postoperative diagnosis disclosed that surgery was performed to repair the complainant's lacerated left ulnar nerve, lacerated cutaneous nerve of the forearm, lacerations on the left forearm and left leg, and a lacerated flexor carpi ulnaris muscle.

(R.I.2002) (quoting *Otero,* 788 A.2d at 475). Thus, because the evidence in this case was sufficient to withstand the more stringent review of the defendant's motion for a new trial, "it follows that the evidence was also sufficient to withstand a motion for a judgment of acquittal." *Id.* Consequently, the trial justice correctly denied the defendant's motion for a judgment of acquittal on counts 1 and 3.

### Conclusion

For these reasons, we deny and dismiss the defendant's appeal, and we affirm the judgment of conviction entered by the Superior Court, to which we return the papers in this case.

Justice LEDERBERG participated in all proceedings related to this case and authored this opinion for the Court prior to her death on December 29, 2002.