**STATE**

v.

**Edward PEOPLES.**

No. 2009–13–C.A.

Supreme Court of Rhode Island.

June 21, 2010.

Lauren S. Zurier, Department of Attorney General, for Plaintiff.

Catherine Gibran, Office of the Public Defender, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on May 6, 2010, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. The defendant, Edward Peoples (defendant or Peoples), appeals from a conviction of one count of first-degree child molestation and two counts of second-degree child molestation. Peoples was sentenced to thirty years at the Adult Correctional In-

stitutions, ten years to serve and twenty years suspended, with probation on the first-degree sexual assault count and twenty years for each of the remaining counts, five years to serve and fifteen years suspended, with probation—all sentences to run concurrently. On appeal, defendant contends that the trial justice improperly limited cross-examination of a witness and that the trial justice erred in denying his motion for a new trial. After reviewing the memoranda submitted by the parties and hearing counsel's arguments, we are satisfied that cause has not been shown and, thus, the appeal may be decided at this time. We affirm the judgment of conviction.

## Facts and Travel

The facts in this case arise from an incident that occurred in 2002. At that time, Kenneth, then eight years old, was visiting the home of his aunt, Theresa.[1] The assaults occurred when defendant, Theresa's second cousin, sexually molested young Kenneth. He did not disclose the assaults until 2007. The defendant subsequently was arrested and indicted on the charges referred to above.

A jury trial was held in January 2008; Kenneth, who resides with his mother in Virginia, was the first witness called by the state. He testified that he visited his aunt in Rhode Island during summer vacation, from 2001 to 2004. Kenneth testified that he stayed with Theresa in 2001 and 2002, and that she lived in a third-floor apartment. When Kenneth stayed there, he slept on the couch in the living room or in the bedroom with his aunt.

Kenneth testified that one evening in 2002, defendant was watching movies in

---

1. Because the victim was a minor when the molestations occurred, we shall use a pseudonym to protect his privacy. We also shall use pseudonyms for all family members involved in this case.

Theresa's living room with Theresa and Kenneth. Eventually, Theresa went into her bedroom to go to sleep. Kenneth fell asleep while watching the movie but was awakened when defendant placed his hand over his mouth. The defendant pulled down Kenneth's shorts and boxers, put his hand on Kenneth's penis, and moved his hand up and down. After this, defendant proceeded to place his mouth on Kenneth's penis for approximately ten seconds and then pulled out his own penis and began masturbating. Kenneth testified that defendant said to him, "Now do me" and placed Kenneth's hand on defendant's penis. The defendant then masturbated again and ejaculated on the couch. The entire incident took around four minutes. After the incident, defendant told him that, if he said anything about it, "he would come for me." Shortly thereafter, defendant left the apartment. Although Kenneth was crying and frightened, he eventually went back to sleep.

Kenneth testified that although it was dark when defendant assaulted him the moonlight allowed him to see defendant's face and there was some light from the street lights outside the apartment. Kenneth initially testified that he did not see defendant again after this incident, but later stated that he saw him once or twice thereafter and that defendant gave him a look he discerned as threatening. On cross-examination, Kenneth added that he did not recall anyone else staying overnight at Theresa's apartment other than defendant. However, he was confronted with testimony from a prior hearing in which he recalled one other person staying over at Theresa's house but could not recall a name. Kenneth testified that he did not remember making that statement.

Theresa also testified at trial; she stated that defendant is her second cousin and visited her two or three times per week during the summer of 2002, when the incident occurred. She specifically recalled the night of the incident; when she went to bed, defendant and Kenneth still were in the living room. At about 4:50 a.m., defendant woke Theresa up to tell her to lock the door because he was leaving; however, when she rose to lock the door, he was gone. She went back to sleep and woke up again around 7 a.m. and noticed that Kenneth was crying; he told her that he had a headache.

Defense counsel's cross-examination of Theresa is relevant to the issues that confront us. A series of questions were posed to Theresa about the windows, locks, and blinds in her apartment. Theresa testified she had only one key to the apartment and that there were five windows in the living room. However, she always kept her blinds closed. Next, counsel asked Theresa whether other men spent the night at her apartment. The prosecution immediately objected, and defense counsel explained at a side-bar conference that he was attempting to explore a third-party perpetrator defense. The trial justice informed defense counsel that to do so, he needed to make an offer of proof, with specificity, demonstrating that another person, not defendant, could have committed the crimes. Defense counsel stated that he would be unable to do so; as a result, the trial justice sustained the state's objection to that question. Significantly, defendant made no offer of proof or further argument about this purported defense.

The final witness to testify for the state was Lucy, Kenneth's mother and Theresa's sister, who resides in Virginia. Lucy corroborated Kenneth's visits to Rhode Island during summer vacation and testified that he made such a visit in the summer of 2002. She testified that on January 29, 2007, while she and Kenneth were watch-

ing a television show on child molestation, Kenneth told her that defendant had molested him. Lucy called her sister and asked to speak with defendant about the incident, to no avail. Lucy testified that she contacted law enforcement in Rhode Island to report the incident.

The defendant testified and denied committing the alleged sexual acts on Kenneth. Although he admitted to being in Theresa's apartment on occasions when Kenneth was there, he did not recall being in Theresa's apartment when Kenneth fell asleep, nor did he recall any animosity between them. The defendant stated how he stopped by Theresa's apartment at lunchtime and after work, and he said that he visited sometimes as often as five times per week. The jury returned a verdict of guilty on all counts. Subsequently, defendant filed a motion for a new trial, and a hearing was held on April 23, 2008.

At the hearing, defense counsel asserted that Kenneth's identification of defendant was suspect because of the dearth of light in the apartment, such that the child would have had difficulty seeing anyone in the room. In response, the prosecution contended that Kenneth was a credible witness, that Theresa's testimony confirmed that defendant and Kenneth were left alone, and that there was adequate light in the living room. The prosecution also argued that Kenneth was familiar with defendant's voice based on defendant's numerous visits to Theresa's apartment and that defendant spoke to Kenneth during the incident.

In ruling on the motion for a new trial, and specifically referring to defense counsel's attempt to argue a third-party perpetrator defense, the trial justice declared: "But [defense counsel's] protestations that some phantom molester somehow gained access to that room and perpetrated these crimes on [Kenneth] is without any foundation and evidence or fact in this case." Further, the trial justice found that Kenneth's, Theresa's, and Lucy's testimony was consistent and credible. The trial justice also noted that it was the function of the jury to make a judgment on whether there was enough light for Kenneth to see defendant. When referencing what evidence the jurors had before them, the trial justice noted that the jury had many facts upon which it could rest its verdict, including the fact that Kenneth knew defendant and was familiar with his voice.

Accordingly, the trial justice declared that he agreed with the jury's verdict and denied defendant's motion for a new trial; he was sentenced on September 19, 2008, and filed a notice of appeal on September 23, 2008; final judgment of conviction was entered on October 1, 2008.[2]

On appeal, defendant raises two issues; first, he contends that the trial justice erred in precluding cross-examination of Theresa concerning any male visitors when Kenneth was staying with her. Specifically, defendant asserts that "[w]hat was precluded here was quintessential cross-examination to probe all of the salient facts and afford the jury a true picture of life within [Theresa's] apartment." The state, on the other hand, contends that defense counsel

---

2. The notice of appeal was filed before the final judgment of conviction was entered; we note that this practice is permissible under Article I, Rule 4(b) of the Supreme Court Rules of Appellate Procedure:
    "*Appeals in Criminal Cases.* In a criminal case the notice of appeal by a defendant shall be filed with the clerk of the Superior Court within twenty (20) days after the entry of the judgment or order appealed from. A notice of appeal filed after the announcement of a decision, sentence or order but before entry of the judgment or order shall be treated as filed after such entry and on the day thereof."

did not make an offer of proof sufficient to satisfy the trial justice as to these salient facts and that, therefore, the trial justice did not abuse his discretion in precluding that part of the cross-examination. Next, defendant contends that the trial justice was clearly wrong when he denied the motion for a new trial because the jury verdict "was against the fair preponderance of the evidence and failed to do substantial justice." The state responds that the trial justice properly applied the standard for passing on a motion for a new trial and, after doing so, found that he agreed with the jury's verdict.

### Standard of Review

■ We review defendant's contentions that the trial justice erroneously limited his right of cross-examination under an abuse of discretion standard. As we recently declared in *State v. McManus*, 990 A.2d 1229, 1234 (R.I.2010), "the standard of review of a challenge to a trial justice's restriction on cross-examination is clear abuse of discretion." *See State v. Walsh*, 731 A.2d 696, 698 (R.I.1999) ("This Court has previously concluded that the exercise of discretion by the trial justice in limiting the scope of cross-examination will not be disturbed absent a clear abuse of that discretion."); *State v. Brown*, 709 A.2d 465, 473 (R.I.1998) ("[A] criminal defendant is constitutionally guaranteed the right to an effective cross-examination of the prosecution's witnesses. * * * [T]he scope of cross-examination is subject to limitation by the trial justice's exercise of his or her sound discretion.").

■ The defendant also contends that the trial justice erred in denying his motion for a new trial. "It is well settled that when reviewing a motion for a new trial, the trial justice must determine 'whether the evidence adduced at trial is sufficient for the jury to conclude guilt beyond a

reasonable doubt.'" *State v. Stone*, 924 A.2d 773, 779 (R.I.2007) (quoting *State v. Scurry*, 636 A.2d 719, 725 (R.I.1994)). "If the trial justice has complied with this procedure and articulated adequate reasons for denying the motion, his or her decision will be given great weight and left undisturbed unless the trial justice overlooked or misconceived material evidence or otherwise was clearly wrong." *State v. Horton*, 871 A.2d 959, 967 (R.I.2005) (quoting *State v. Gomez*, 848 A.2d 221, 234 (R.I.2004)). Accordingly, our function is to determine whether the record in this case is sufficient for the jury to determine the guilt of defendant beyond a reasonable doubt and whether the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong.

### Analysis

#### A. Limitation of Cross–Examination

■ We first address defendant's challenge to the trial justice's rulings during Theresa's cross-examination. The defendant argues that the trial justice improperly precluded defense counsel from asking questions about a potential third-party perpetrator. We deem this argument without merit.

After a careful review of the record in this case, we are satisfied that the trial justice appropriately precluded defense counsel from engaging in this line of questioning. Defense counsel presented not a scintilla of evidence, by offer of proof or otherwise, that anyone else was in the apartment that evening besides defendant, Kenneth and Theresa. At trial, after defendant asked Theresa if any other men spent the night at her apartment, the following colloquy took place:

"THE COURT:—[Y]ou have to go a lot farther than that. You have to make an offer of proof according to the cases that this Court has to weigh. It cannot be

that some other person, unknown to you, could have done this. You have to give me some specificity who you think it was, why you think this so and this must be embodied into an offer of proof. Are you prepared to do that?

"[DEFENSE COUNSEL]: Well, Your Honor, based on what this person has stated, I can't do that, no."

■ Before this Court, defendant acknowledged that: "defense counsel did not make an offer of proof sufficient to pursue the third party perpetrator defense since the identity of the actual perpetrator was apparently unknown to him." Accordingly, we need go no further. "The scope of cross-examination is not unlimited and the questioning is subject to the sound discretion of the trial justice.   * * *  Inquiries that are potentially *misleading* or *irrelevant,* that offer little or no probative value, or that exceed the scope of the direct examination are objectionable." *State v. Wright,* 817 A.2d 600, 610 (R.I.2003) (emphases added). A criminal trial is a search for the truth, and misleading inquiries are excludable by the trial justice. *See State v. Oster,* 922 A.2d 151, 163 (R.I.2007) ("A criminal trial is a search for the truth; it is not a game of chess."). Concerning the third-party perpetrator defense, this Court has declared:

> "where a defendant seeks in cross-examination to open up new avenues of inquiry concerning the possible motive of a third party to commit the crime of which the defendant is accused, *the trial justice may properly exclude such evidence as a collateral matter—absent an offer of proof by the defendant* 'tending to show the third person's opportunity to commit the crime and a proximate connection between that person and the actual commission of the crime.'" *State v. Brennan,* 526 A.2d 483, 488 (R.I.1987)

(quoting *State v. Gazerro,* 420 A.2d 816, 825 (R.I.1980)) (emphasis added).

In *Brennan,* 526 A.2d at 488, the defendant failed to make an offer of proof or introduce any evidence suggesting that a third party committed the murder for which defendant was accused. This Court held that it was not an abuse of discretion for the trial justice to preclude defense counsel's cross-examination about a third party. *Id.* In this case, as in *Brennan,* defendant has provided no evidence that a third party may have entered Theresa's apartment on the night in question. *See State v. Gomes,* 881 A.2d 97, 112 (R.I.2005) (holding that defense counsel's offer of proof was inadequate and that it was proper for the trial justice to preclude admission of contested evidence); *Gazerro,* 420 A.2d at 825 (holding that it was appropriate to limit third-party perpetrator defense when defendant offered no evidence that third party was in the vicinity of the murder scene and such an inquiry would have allowed the jury to speculate on a collateral matter). Consequently, it is our judgment that precluding this part of the cross-examination was not an abuse of discretion.

Finally, we pause to note that there must be a good-faith basis for asking a witness about a given set of facts at trial because there is a danger that the jury may consider questions that are not factually based and then deliberate on matters that are not in evidence. *See State v. Tempest,* 651 A.2d 1198, 1209 (R.I.1995) ("We note that the prosecution had a good-faith belief as a basis for this question. * * * Therefore, we are not confronted with a situation wherein counsel has made a prejudicial assertion of fact without any basis for having done so.").

### B. Denial of the Motion for a New Trial

■ The defendant next contends that the trial justice erred when he denied

the motion for a new trial. In passing on a motion for a new trial, it is the function of the trial justice to consider whether the verdict is against the weight of the evidence and to exercise his or her independent judgment by "weighing the evidence and assessing the credibility of the witnesses." *State v. Clark*, 974 A.2d 558, 569 (R.I.2009). Next, "the trial justice must determine by an individual assessment of the evidence * * * whether the justice would have reached a different result from that of the jury." *State v. Salvatore*, 763 A.2d 985, 991 (R.I.2001) (quoting *State v. Banach*, 648 A.2d 1363, 1367 (R.I.1994)). Finally, if the trial justice agrees with the verdict or if reasonable minds could differ as to the result, then the motion for a new trial should be denied. Conversely, however, if the trial justice finds that the state did not sustain its burden, then a new trial must be ordered. *State v. Otero*, 788 A.2d 469, 472 (R.I.2002).

Here, the trial justice carefully reviewed the evidence that was presented to the jury; in doing so, he referred to specific testimony that supported the jury's verdict. The trial justice found Kenneth to be articulate and to have credibly testified about the events that occurred on the night in question and that Theresa and Lucy corroborated Kenneth's testimony. Addressing the adequacy of the light where the assault occurred, the trial justice acknowledged that Theresa testified that the blinds in the apartment were closed, but he noted that defendant spoke to Kenneth and that the child was familiar with defendant's voice. The trial justice declared that the witnesses were credible; he said, "their testimony, I believe, was forthright and believable and genuine." The trial justice denied the motion for a new trial.

Our close review of the record from the hearing on the motion for a new trial satisfies us that the trial justice did not err in reaching this conclusion. The trial justice undertook a deliberate, careful and thorough review of the evidence before him, and his decision is entitled to great weight. Further, we see nothing in the record before us that any evidence was overlooked or misconceived by the trial justice. *See State v. Adefusika*, 989 A.2d 467, 480 (R.I.2010) ("In passing upon [the defendant's] motion for a new trial, it is clear that the trial justice conducted the required analyses, considered the evidence proffered at trial, and weighed the relative credibility of the several witnesses in light of his charge to the jury."); *State v. Hallenbeck*, 878 A.2d 992, 1012 (R.I.2005) ("We are satisfied that the trial justice considered the evidence adduced at trial in a comprehensive manner, weighed the credibility of the witnesses, and chose among conflicting testimony. The trial justice articulated a more than adequate rationale for denying [the] defendant's motion for a new trial * * *.").

In conclusion, it is our judgment that the trial justice appropriately denied the defendant's motion for a new trial.

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court, to which we remand the papers in this case.