May 17, 2019

**Supreme Court**

No. 2017-357-C.A.

(P1/12-1582A)

State                              :

v.                              :

Jamal Rogers.                              :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at (401) 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                                  :

v.                                  :

Jamal Rogers.                          :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.**  This case came before the Supreme Court on March 5, 2019, on appeal by the defendant, Jamal Rogers (defendant), from a judgment of conviction entered in the Superior Court following a jury finding of guilty on five counts of second-degree sexual assault, in violation of G.L. 1956 § 11-37-4.  Before this Court, the defendant argues that the trial justice erred in denying his motion for a new trial and that the verdict failed to serve the interests of justice.  The case is before us pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown, and we proceed to decide the appeal at this time.  For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

### Facts and Travel

On May 25, 2012, a grand jury returned an indictment that charged defendant with one count of first-degree sexual assault, in violation of § 11-37-2 (count one); five counts of second-degree sexual assault, in violation of § 11-37-4 (counts two through six); and one count of assault with intent to commit first-degree sexual assault, in violation of G.L. 1956 § 11-5-1

(count seven). In January 2017, a jury trial was held in Providence County Superior Court; the state presented two witnesses: Molly,[1] the complaining witness, and Detective Sergeant Matthew Ryan (Det. Ryan), the lead investigator. We summarize below the pertinent testimony presented at trial.

Molly testified that, in February 2012, she was fifteen years old and a sophomore at Woonsocket High School; at that time, she was participating in an after-school online English makeup class, which took place Monday through Thursday at the high school, from 2:30 p.m. until five in the evening. On Mondays, Molly would walk a short distance to her grandparents' home after class, and her father would pick her up there.

On Monday, February 6, 2012, Molly testified that, after a "really rough day at school[,]" she decided to skip the online course. Instead, she went to Cass Park, a playground adjacent to the high school, to sit on the swings and "reflect and think about [her] day * * * before [she] went home[.]" Noticing that dusk was fast approaching, Molly approached a passing stranger, a "big, chubby'ish" man, and asked if he knew the time. This stranger was defendant.[2] The defendant replied in the negative and asked her, "[W]ould you happen to have any weed on you[?]" Molly responded in the negative, and defendant walked away. After waiting on the swings for several more minutes for someone else to walk by, Molly reluctantly decided to walk back to the high school in order to check the time in the main office.

The defendant suddenly approached Molly from behind, grabbed the hood of her jacket, and dragged her up a hill in the park, behind the swings. Molly attempted to dig her feet into the ground to make him stop dragging her, and put her hands behind herself to make him let go of

---

[1] We refer to the complaining witness in this case by a pseudonym.

[2] The fact that defendant weighed over 300 pounds on the date of the incident was excluded from evidence.

her jacket but, at approximately 104 pounds, she "was not strong enough and after a while [she] gave up." At the top of the hill, hidden in a wooded area near a big rock, defendant continued to restrain Molly and asked her name, her bra size, and whether she was a virgin. "Out of fear," Molly answered each question. She testified that, as defendant asked her the questions, "[h]e touched my breasts over my clothes and * * * he touched in between my legs and my butt."

When defendant began to kiss Molly, she testified, that she submitted because she was afraid that "something worse would happen." The defendant removed Molly's shirt and bra, and touched her breasts. Molly testified that she "attempt[ed] to stop him and gave up because [she] was too weak." At trial, she explained that she was crying and had her eyes closed "a lot" of the time, because she was afraid. The defendant next asked Molly to "give him a blow job for $20[.]" She refused. The defendant proceeded to unzip his pants and "tried to force [her] to give him a blow job" by pushing her head down towards his penis. Molly struggled to lift her head up, and, after a few attempts, defendant released her head. The defendant pushed Molly onto the ground and pulled her pants and underwear off. She testified: "He undid his pants and boxers and pulled them down to his ankles and then got on top of me." As Molly lay on her back, defendant laid "99 percent" of his body on top of her and "stuck his penis inside of [her] vagina." After a few minutes or so, defendant stopped, got up from the ground, and began to put his clothes back on. According to Molly, when his back was turned, she jumped up, grabbed her clothes and ran, naked, down the hill.

At this point it was getting dark outside, and, as she ran to her grandparents' home, crying and vomiting, she put her clothes back on. Although it was rush hour and she ran past homes and open businesses, Molly testified, she saw no one, nor did anyone ask if she needed help. When Molly arrived at her grandparents' home, it was past 5:30—when she was expected

to be home—and her grandparents were irate. She did not tell her grandparents about the incident because she was not "comfortable telling them what happened" and she was "ashamed"; she testified: "I felt defiled. * * * I felt dirty. Disgusting." When Molly's father arrived to pick her up, he was also furious. At trial, Molly testified that she and her father had a contentious relationship and that her late arrival home that night had made matters worse. After he shouted at her and used demeaning names, the two went home; and, shortly thereafter, she was grounded. Molly did not tell her father about the assault because, she testified, she "was scared and ashamed and embarrassed and it is definitely something that I was not comfortable talking with my father about, something that he wouldn't understand."

The next day, Molly went to her guidance counselor, Robin Corrigan (Corrigan), and told her that defendant kissed and touched her inappropriately the night before—Molly did not mention that defendant allegedly had raped her. Corrigan contacted the school resource officer, Officer David Chattman (Officer Chattman), to report the assault, and Molly told him what she had told Corrigan. Officer Chattman contacted Det. Ryan, who was the officer in charge of the Juvenile Division of the Woonsocket Police Department, and informed him that a sexual assault had occurred at Cass Park next to the high school. Later that day, Molly met with Det. Ryan at the police station and positively identified defendant from a photo lineup as the man who assaulted her in Cass Park. She placed her initials and the date underneath his photograph; she confirmed her identification of defendant as the man who had sexually assaulted her in court during trial.[3]

Shortly thereafter, Woonsocket police officers were dispatched to locate defendant, who was found in Cass Park. He was taken in for questioning. At the police station, Det. Ryan

---

[3] Eyewitness identification is not an issue before the Court.

interviewed defendant about Molly's allegations of sexual assault. The defendant stated that when he was in Cass Park the day before, he "got to be friends with this girl" named Molly. After he explained that they spoke for approximately thirty minutes, defendant stated that he asked Molly if he could remove her clothes and "kiss her[.]"[4] The defendant stated that she consented and explained that "there was no force or nothing." He then admitted that he asked Molly to perform fellatio on him but, given the lateness, she instead asked defendant if they could meet up at another time. The detective made no mention to defendant of Molly's allegation of vaginal penetration because, at that time, he was not aware of such an allegation. At the conclusion of the interview, defendant was charged with second-degree sexual assault.

Approximately one week later, Molly went back to Corrigan and told her the "full story"—that defendant also vaginally penetrated her. Molly testified that she had not initially told Corrigan everything that had occurred on the night in question because she felt "very ashamed[.]" On March 14, 2012, Det. Ryan went to Molly's home and asked her to write a statement of the events that transpired during the incident, including the touchings as well as the alleged penetration.[5] The defendant was charged and subsequently indicted.

Almost five years later, on January 23, 2017, a jury found defendant guilty of five counts of second-degree sexual assault (counts two through six). The defendant was acquitted of both first-degree sexual assault (count one) and assault with intent to commit first-degree sexual assault (count seven). The defendant's motion for a new trial subsequently was heard and

---

[4] During the interview, Det. Ryan told defendant that Molly's shirt was ripped, and defendant initially denied that he caused the rip. However, after further questioning, defendant admitted to accidentally ripping the shirt. Subsequently, it was later determined that the shirt had never been ripped and that this was incorrect information given by Officer Chattman.

[5] Detective Ryan testified that a written statement was not taken until March 14, 2012, because, without an allegation of first-degree sexual assault, no statement is required by the police department.

denied. The defendant was sentenced to serve four concurrent fifteen-year terms in the Adult Correctional Institutions for counts two through five. For count six, defendant was sentenced to fifteen years suspended, with probation, to run consecutively to the sentences for counts two through five. The defendant timely appealed.

**Standard of Review**

When this Court reviews a motion for a new trial, we accord "great weight to a trial justice's ruling" when that justice "articulate[d] sufficient reasoning in support of the ruling." *State v. Kizekai*, 19 A.3d 583, 589 (R.I. 2011) (quoting *State v. Guerra*, 12 A.3d 759, 766 (R.I. 2011)). "As long as 'the trial justice has complied with this procedure and articulated adequate reasons for denying the motion, his or her decision will be given great weight and left undisturbed unless the trial justice overlooked or misconceived material evidence or otherwise was clearly wrong.'" *State v. Phannavong*, 21 A.3d 321, 325 (R.I. 2011) (quoting *State v. Peoples*, 996 A.2d 660, 664 (R.I. 2010)).

**Analysis**

Before this Court, defendant assigns error to the decision of the trial justice denying his motion for a new trial, arguing that the trial justice overlooked and misconceived the evidence. Specifically, defendant claims that the jury's acquittal of count one, first-degree sexual assault, and count seven, assault with intent to commit first-degree sexual assault, established that the jury discounted Molly's version of events and that the trial justice, acting as the thirteenth juror, should have likewise rejected Molly's testimony and given it no weight.

Rule 33 of the Superior Court Rules of Criminal Procedure provides, in pertinent part, that "the court may grant a new trial to [a] defendant if required in the interest of justice." When a trial justice considers whether a verdict is against the weight of the evidence, "the trial justice

[must] place 'himself or herself in the role of a thirteenth juror and then exercise his or her independent judgment as to the credibility of the witnesses and the weight of the evidence.'" *State v. Rainey*, 175 A.3d 1169, 1189 (R.I. 2018) (brackets omitted) (quoting *State v. Grantley*, 149 A.3d 124, 131 (R.I. 2016)). "Specifically, 'the trial justice must (1) consider the evidence in light of the jury charge, (2) independently assess the credibility of the witnesses and the weight of the evidence, and then (3) determine whether he or she would have reached a result different from that reached by the jury.'" *State v. Heredia*, 10 A.3d 443, 446 (R.I. 2010) (quoting *State v. Texieira*, 944 A.2d 132, 140 (R.I. 2008)). "If, after conducting this independent review, the trial justice agrees with the jury's verdict or if the evidence is such that reasonable minds could differ as to the outcome, the motion for a new trial should be denied." *State v. Perkins*, 966 A.2d 1257, 1260 (R.I. 2009) (quoting *State v. Cerda*, 957 A.2d 382, 385 (R.I. 2008)). "Conversely, however, if the trial justice finds that the state did not sustain its burden, then a new trial must be ordered." *Peoples*, 996 A.2d at 666.

After a careful review of the trial transcript and exhibits, it is our opinion that the trial justice did not overlook or misconceive material evidence, and that he articulated more than adequate grounds for denying defendant's motion for a new trial. After hearing argument from both parties, the trial justice conducted a thorough overview of the relevant caselaw, summarized the testimony adduced at trial, and passed on the credibility of the witnesses. He stated:

> "This [c]ourt finds[,] notwithstanding [Molly's] difficulty at times in recollecting some facts and testifying to some facts with complete clarity[,] that her overall appearance, testimony, and recollection of the events on February 6, 2012 were credible and worthy of belief as it related to Counts 2, 3, 4, 5 and 6. In conclusion this [c]ourt finds that the evidence in the record as it relates to those counts is such that reasonable minds could differ and therefore the verdict consisting of guilty findings on those five counts of second degree sexual assault are affirmed."

We are reluctant to overturn the credibility findings of a trial justice, because "a trial justice, being present during all phases of the trial, is in an especially good position to evaluate the facts and to judge the credibility of the witnesses." *State v. Baptista*, 79 A.3d 24, 29-30 (R.I. 2013) (quoting *State v. Paola*, 59 A.3d 99, 104 (R.I. 2013)).  It is evident that the trial justice in the case before us followed the proper procedure for assessing a challenge to the weight of the evidence.  Additionally, there is no indication that he overlooked or misconceived material evidence.  Because there is nothing in the record before us to suggest that he erred in his ruling on the motion for a new trial, we are confronted with no reason to disturb his findings.  We therefore affirm the trial justice's ruling denying the defendant's motion for a new trial.

## Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court.  The record shall be returned to the Superior Court.

# STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Jamal Rogers. |
| **Case Number** | No. 2017-357-C.A. (P1/12-1582A) |
| **Date Opinion Filed** | May 17, 2019 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Daniel A. Procaccini |
| **Attorney(s) on Appeal** | For State:<br><br>Lauren S. Zurier<br>Department of the Attorney General |
| | For Defendant:<br><br>Megan F. Jackson<br>Office of the Public Defender |

SU-CMS-02A (revised June 2016)