June 19, 2019

**Supreme Court**

No. 2018-151-C.A.

(P2/16-926A)

State                    :

   v.                    :

Joel Najera.             :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at (401) 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                          :

            v.                 :

Joel Najera.                   :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Goldberg, for the Court.**  This case came before the Supreme Court on May 8,

2019, on appeal by the defendant, Joel Najera (defendant), from a judgment of conviction

entered in the Providence County Superior Court following a jury trial.  Before this Court, the

defendant argues that the trial justice erred in denying his motion for a new trial because the

jury's verdict was against the weight of the evidence.[1]  The parties were directed to appear and

show cause why the issues raised in this appeal should not be summarily decided.  After hearing

the arguments of counsel and examining the memoranda filed by the parties, we are of the

opinion that cause has not been shown, and we proceed to decide the appeal at this time.  For the

reasons set forth in this opinion, we affirm the judgment of the Superior Court.

**Facts and Travel**

On March 23, 2016, defendant was charged by way of criminal information with one

count of assault with a dangerous weapon, to wit, a machete, in violation of G.L. 1956 § 11-5-2

(count 1), and one count of malicious injury to property, to wit, a car window and basement

---

[1] Before the Superior Court justice, defendant's motion for a new trial was based on two grounds: (1) newly discovered evidence, and (2) the verdict was against the weight of the evidence.  On appeal, defendant challenges only the part of the decision in which the trial justice found that the verdict was not against the weight of the evidence.

window, in violation of G.L. 1956 § 11-44-1 (count 2). A five-day jury trial commenced on October 30, 2017, in Providence County Superior Court. Several witnesses, including defendant, presented conflicting versions of events in this case, which occurred during the early hours of Christmas Day 2015. We proceed to summarize the pertinent testimony of the witnesses in the case.

The complaining witness, Luis Portillo (Portillo), testified that, on December 25, 2015, he was listening to music and having drinks with a group of friends in the basement apartment of a building located at 164 Regent Avenue in Providence, Rhode Island. Portillo testified that defendant knocked on the basement door and asked the group to turn down the music because "he had children upstairs"; defendant also indicated that if the volume was not lowered, "he was going to call the police." Portillo testified that defendant looked "bothered" when he was speaking to the group and that "[h]is eyes, they were angry, and he talked really upset." After the group turned the music off, defendant then asked Portillo to move his car because it was parked in defendant's designated parking space; the two walked to the parking lot together.

As Portillo was getting into his car, he noticed in the driver's side mirror that defendant was approaching him with a "bladed weapon" in his hand; Portillo subsequently described the bladed weapon as a machete. The defendant swung the machete at Portillo, who ducked and tried to back away. The defendant swung the machete a second time, slicing the left side of Portillo's face from his left eye to his left nostril. As Portillo retreated to the basement of the apartment building, Rafael Sanchez, Sr. (Sanchez), another tenant of 164 Regent Avenue, walked into the parking lot, approached defendant, and told him to "calm down."

While Portillo was cleaning his wound in the basement apartment, his friend, Steven Figueroa, called 911 and told the dispatcher that there was a "guy with a machete." The dispatcher notified the Providence Police Department that a "male with the machete hit another

man in the face with the machete."[2]  As they waited inside the house for the police officers to arrive, Portillo testified, he heard defendant breaking his car windows and the basement windows and heard defendant yell, "Come out. Come out because I'm going to kill you."  Once the police arrived and Portillo came outside, he noticed that his rear car window and his right rear passenger window had been shattered.  An officer asked Portillo who had assaulted him, and Portillo told the officer that it was defendant.  The police detained defendant, and Portillo was subsequently taken to the hospital.

At trial, Sanchez also testified for the prosecution.  He recalled that, when his girlfriend dropped him off at 164 Regent Avenue on December 25, 2015, Portillo's car was parked in defendant's designated parking space.  When Sanchez went to tell the group in the basement that they needed to move Portillo's car, he "realized that [Portillo] was already going to move the car."  He returned to the parking lot and witnessed defendant take a machete from the trunk of his vehicle and hit Portillo in the face; Sanchez yelled, "Don't do it," to no avail.  Sanchez proceeded to grab Portillo, brought him inside the house "so that he wouldn't have more trouble," and detained the group of friends in the basement so "they couldn't go out because that was just going to make more problems[.]"  Sanchez testified that he also heard defendant smash the car windows and the basement windows and heckle the group in the basement.  Sanchez also went outside and spoke to the officers when they arrived.[3]  Sanchez testified that, during their investigation, the officers looked around the parking lot and inside defendant's vehicle, but they did not find the machete.

---

[2] The 911 tape was played for the jury.

[3] Because Sanchez does not speak English, the statement that he made to the police was translated by his son's friend.

Maria Chevez (Chevez), Sanchez's girlfriend, next testified that, at approximately 12 a.m. on December 25, 2015, she dropped Sanchez off at 164 Regent Avenue and proceeded to drop another friend at his home about five minutes away. When she returned to 164 Regent Avenue, she parked her car at the entrance of the driveway because her parking space was blocked by defendant's vehicle. Chevez testified that, as she got out of her car, she approached defendant, who had a machete in his hand and appeared "nervous." When she asked him what happened, defendant said, "Neighbor, I didn't want to do it. I didn't want to do it, Neighbor." Chevez testified that she did not say anything else to defendant, but that, as she ran up the driveway, she noticed that the windows of a car were broken and that defendant's sister was exiting the apartment building and appeared to be "scared." As Chevez entered the building, she began to hear sirens and watched defendant throw the machete in the trunk of his vehicle. Chevez then saw Sanchez coming out of the basement while "trying to keep the kids who were inside from going outside." She testified that when she spotted a bloodied Portillo with Sanchez, she went into the apartment building for a wet towel to help clean him. When Chevez went back outside, the police had arrived and defendant was inside a police cruiser. She also testified that she observed the officers searching the outside area for the machete, including defendant's vehicle.

Patrolman Kyle Richards (Officer Richards) of the Providence Police Department was on duty on December 25, 2015, when he responded to a call at 164 Regent Avenue. Officer Richards testified that when he arrived he encountered two males and a female in the driveway, including Portillo. While Officer Richards and another Providence police officer were speaking with Portillo, defendant came from behind the apartment building "yelling in Spanish" and "kind of frantic." After Portillo told the officers what occurred, Officer Richards immediately placed defendant in custody; Officer Richards testified that defendant was not bleeding, nor did he

- 4 -

appear to have any injuries. After defendant was placed in the police cruiser, the officers searched the area surrounding the apartment building for the machete, but it was not located.

After the state rested its case, defendant moved for a judgment of acquittal, which the trial justice denied. The defense presented Stacy Rosario (Rosario), who also resided at 164 Regent Avenue on December 25, 2015. Rosario's account of what happened markedly differed from that of the state's witnesses. She testified that defendant woke her by knocking on her door, at approximately 1:30 a.m., to ask if her car was parked in his parking space, to which she responded in the negative and told him that it was probably a person from downstairs because they usually "take my parking" space. When defendant walked downstairs, Rosario testified, she heard people arguing about defendant's parking space. She then went to a window that overlooked the parking lot and observed defendant and "three or four boys" arguing with him. She testified that one of the boys got closer and closer to defendant and eventually pushed him. In response, defendant punched the boy in the face and the boy fell to the ground. The boy, whose face was bleeding, stood up with the aid of his friends and went back to the basement.

According to Rosario, she then went downstairs because, as someone who works in the medical field, "that's something that you do naturally[.]" As she made her way outside to the parking lot, she encountered defendant's sister; however, she did not see Sanchez, who, she testified, was not outside when the boy was punched and did not accompany the boy to the basement. She did, however, observe defendant break the windows of a car with his bare hands. Rosario testified that she attempted to calm defendant. At this point, according to Rosario, Sanchez appeared and she told him what happened. When asked whether she saw a machete in defendant's possession, she responded, "No, I didn't." She also confirmed that the officers looked in the backyard at 164 Regent Avenue and opened the door to defendant's vehicle, but did not locate a weapon.

The defendant also called his sister, Jelen Najera, to testify.[4] According to her testimony, it was between 2 and 3 a.m. when defendant arrived home and there was a car in his parking space. She recalled that he first went upstairs to see if it was a second-floor tenant's car, then he went to the basement to see if the car belonged to anyone down there. Although she could hear arguing, Jelen testified, she could not discern what was being said. She then observed defendant come upstairs from the basement and walk out to the parking lot, followed by three men.

Jelen testified that, once everyone arrived in the parking lot, one of the men pushed defendant "in the throat." Jelen testified that, in response, defendant "slapped" the man, who fell to the ground, "[a]nd that's where he got cut." The other men helped the injured man inside the house; Jelen noticed that the man who fell was bleeding from his face. She also noticed that two female neighbors from upstairs were standing in the parking lot as the police officers arrived. Next, Jelen testified that defendant "was furious and broke the car windows * * * [w]ith a fist." She testified that she never saw defendant with a machete in his hands, but that she observed that his hands were "bleeding all over" after he broke the car windows. Jelen recalled that the officers took defendant into custody but failed to take any statements from Jelen or her female neighbors.

The defendant testified last and repeated much of Rosario and Jelen's testimony. According to defendant, at approximately 2 a.m. on December 25, 2015, he arrived at 164 Regent Avenue and discovered that an unknown car was parked in his parking space. The defendant testified that he first went to the second floor of the apartment building and knocked on his neighbor's door to ask about the vehicle. His neighbor told him that he should go ask the tenants who lived on the first floor or those who lived in the basement. The defendant testified that he went to the basement because he heard some music; and, when he knocked on the

---

[4] For clarity, we refer to Jelen by her first name; we intend no disrespect by doing so.

basement door, defendant testified, he first asked the group in the basement to lower the music because he was going to rest; he testified that the group of people "were bothered" by his request and began arguing with him. The defendant testified that he told the group that "if they didn't calm down that I was going to call the police[,]" and then asked that the car be moved.

The defendant testified that he went out to the parking lot to wait; after a couple of minutes, three men came out and continued to argue with him. The defendant testified that one of the men pushed him and, in response, he hit the man with his fist; the man "fell hard" to the pavement. The defendant testified that his sister told him to "calm down[,]" and the two other men picked up their friend, whose face was bleeding, and took him back to the basement. While the group retreated to the basement, defendant stayed outside because he was "very angry" and yelled at the group to "come outside." When they did not exit the building, defendant testified, he punched two car windows so hard that the windows broke. While defendant was breaking the car windows, he testified, his sister and his two female neighbors were also outside standing behind him in the parking lot.

According to defendant, when the police arrived, one officer went inside the building, while the other officer remained outside with him. A few minutes later, the first police officer exited the apartment building with a group of people from the basement, who pointed to defendant as the person causing the problem. The defendant testified that the police officers: "grabbed me by my hands, they put my hands back, and they arrested me." Contrary to Officer Richards' testimony, however, defendant testified that his "right hand was bleeding a lot." He also testified that the officers took the key to his vehicle and searched it "[f]or about five minutes." When asked by his counsel whether he attacked anyone with a machete that evening, defendant replied in the negative and stated that he did not own a machete.

The jury returned a verdict of guilty on both counts, and on November 29, 2017, defendant's motion for a new trial was heard and denied. Thereafter, defendant was sentenced to three years at the Adult Correctional Institutions, with one year to serve and two years suspended, with probation, on count one; and one year suspended, with probation, on count two. The defendant timely appealed.

**Standard of Review**

When this Court reviews a motion for a new trial, we accord "great weight to a trial justice's ruling" when that justice "articulated sufficient reasoning in support of the ruling." *State v. Kizekai*, 19 A.3d 583, 589 (R.I. 2011) (quoting *State v. Guerra*, 12 A.3d 759, 766 (R.I. 2011)). "As long as 'the trial justice has complied with this procedure and articulated adequate reasons for denying the motion, his or her decision will be given great weight and left undisturbed unless the trial justice overlooked or misconceived material evidence or otherwise was clearly wrong.'" *State v. Phannavong*, 21 A.3d 321, 325 (R.I. 2011) (quoting *State v. Peoples*, 996 A.2d 660, 664 (R.I. 2010)).

**Analysis**

On appeal, defendant argues that the trial justice clearly erred when he denied defendant's motion for a new trial because, according to defendant, the verdict was against the weight of the evidence. The defendant also contends that the trial justice erred by relying on his own opinion about the nature of the injury defendant inflicted on Portillo and concluded that it was consistent with a blade from a sharp instrument. The defendant argues that this observation was beyond the knowledge of a layperson and not supported by medical evidence. Because we deem this argument without merit, we summarily reject it.

Rule 33 of the Superior Court Rules of Criminal Procedure provides, in pertinent part, that "the court may grant a new trial to [a] defendant if required in the interest of justice." When

a trial justice considers whether a verdict is against the weight of the evidence, "the trial justice [must] place 'himself or herself in the role of a thirteenth juror and then exercise his or her independent judgment as to the credibility of the witnesses and the weight of the evidence.'" *State v. Rainey*, 175 A.3d 1169, 1189 (R.I. 2018) (brackets omitted) (quoting *State v. Grantley*, 149 A.3d 124, 131 (R.I. 2016)). "Specifically, 'the trial justice must (1) consider the evidence in light of the jury charge, (2) independently assess the credibility of the witnesses and the weight of the evidence, and then (3) determine whether he or she would have reached a result different from that reached by the jury.'" *State v. Heredia*, 10 A.3d 443, 446 (R.I. 2010) (quoting *State v. Texieira*, 944 A.2d 132, 140 (R.I. 2008)). "If, after conducting this independent review, the trial justice agrees with the jury's verdict or if the evidence is such that reasonable minds could differ as to the outcome, the motion for a new trial should be denied." *State v. Perkins*, 966 A.2d 1257, 1260 (R.I. 2009) (quoting *State v. Cerda*, 957 A.2d 382, 385 (R.I. 2008)). "Conversely, however, if the trial justice finds that the state did not sustain its burden, then a new trial must be ordered." *Peoples*, 996 A.2d at 666.

In the case at bar, we are of the opinion that the trial justice summarized in great detail what he described as the credible evidence presented in this case. Specifically, in denying defendant's motion for a new trial, the trial justice independently assessed the credibility of each witness. Beginning with Portillo, the trial justice noted that he found him "to be a credible witness. * * * I believe that he truly related how this happened, how this assault occurred, and I found his testimony as to how the assault occurred and the Defendant's use of a machete to be credible." In addition, the trial justice found Sanchez and Chevez to be credible witnesses, stating: "Both corroborate Mr. Portillo's version of events, and I believe their testimony * * * [i]n all essential respects was reasonably consistent."

Alternatively, turning to defendant's credibility as a witness, the trial justice found defendant and his witnesses to lack credibility. Specifically, the trial justice stated:

> "I don't believe the defendant or his witnesses. I don't believe the witnesses saw what occurred, frankly. I think they were both inside at the time of the assault, and if they came outside at all, it was during the aftermath following the assault.
>
> "Frankly, to accept the Defendant's version of events, I would have to conclude that the use of the machete or of a machete, was a total fabrication concocted from the very outset by Portillo, by Steven Figueroa, who referred to it when he called 9-1-1, and then confirmed by witnesses, Rafael Sanchez and Maria Chevez. I don't buy that, and neither did the Jury. Also, I feel supporting the Jury's conclusion in this case that the injury to Mr. Portillo was consistent with being caused by a sharp object; for example, a blade, and it's not consistent with having been suffered as a result or caused by a punch or by striking his side of his face on the ground."

The trial justice also took issue with defendant's claim that he shattered Portillo's car windows with his hands, because Officer Richards did not observe any injuries or blood on defendant's hands and it was "very unlikely that one could reap that kind of damage to a car's windows with his bare hands." Finally, the trial justice decided that speculation as to what may have happened to the machete did not change his conclusion that "this happened as Mr. Portillo described[.]" The trial justice agreed with the jury's conclusion that a machete was involved, thus supplying the essential element of the use of a dangerous weapon for count one. He also concluded that defendant was the aggressor, especially given defendant's admission that he broke the windows of Portillo's car; accordingly, the trial justice denied defendant's motion for a new trial.

After a careful review of the trial testimony and of the decision denying the motion for a new trial, we are satisfied that the trial justice "articulated adequate grounds for denying the motion[.]" *Grantley*, 149 A.3d at 131 (quoting *State v. Florez*, 138 A.3d 789, 793 (R.I. 2016)). Clearly, as summarized in this decision, the trial justice carefully reviewed the testimony and

weighed the evidence before him. He specifically noted the shortcomings and inconsistencies of certain witnesses, but he ultimately concluded, based on his own credibility determinations, that the weight of the evidence supported guilty verdicts as to both counts. The trial justice passed upon the credibility of Portillo, Sanchez, and Chevez, and found those witnesses to be quite credible; at the same time, he found defendant and his witnesses to be lacking in credibility—findings to which this Court accords great deference. *See State v. Giard*, 155 A.3d 1193, 1200 (R.I. 2017) ("It is noteworthy that we 'accord deference to the credibility determinations of the hearing justice,' because 'we do not have the same vantage point as him or her, and we are unable to assess the witness' demeanor, tone of voice, and body language.'") (brackets and internal citation omitted) (quoting first *State v. Jensen*, 40 A.3d 771, 778 (R.I. 2012), then *State v. Woods*, 936 A.2d 195, 198 (R.I. 2007)).

Accordingly, we are of the opinion that the trial justice credited the testimony of Portillo, Sanchez, and Chevez, assessed it in light of the jury charge, and determined that he would have reached the same conclusion as the jury, and therefore we will not disturb his denial of the defendant's motion for a new trial.

## Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The record may be remanded to the Superior Court.

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Joel Najera. |
| **Case Number** | No. 2018-151-C.A. (P2/16-926A) |
| **Date Opinion Filed** | June 19, 2019 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Bennett R. Gallo |
| **Attorney(s) on Appeal** | For State:<br><br>Owen Murphy<br>Department of Attorney General<br><br>For Defendant:<br><br>Camille A. McKenna<br>Office of the Public Defender |