November 14, 2019

**Supreme Court**

No. 2017-429-M.P.
(W2/15-54A)

| | |
|---|---|
| State | : |
| v. | : |
| Michael Neugent. | : |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at (401) 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

|  |  |  |
|---|---|---|
| State | : | |
| v. | : | |
| Michael Neugent. | : | |

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Goldberg, for the Court.** In this case, we are confronted with a ten-hour police standoff in Hopkinton, Rhode Island, precipitated by a 911 call by the longtime girlfriend of the defendant, Michael Neugent, arising from a domestic dispute. The defendant's mother—who was also his landlord—provided the responding officer with keys to the defendant's apartment. The defendant was barricaded inside the dwelling and threatened to shoot the officer if he entered. Within minutes, officers from multiple police departments, including the Rhode Island State Police SWAT team and approximately twenty police vehicles, surrounded the apartment building. After hours of fruitless negotiations, the SWAT team, garbed in full tactical gear and armed with assault weapons and explosives, executed a forced entry into the defendant's apartment. The defendant struck the first officer who came through the door with an approximately three-foot-long construction level. A brief struggle ensued; and, despite strenuous resistance, the defendant was apprehended. He was later charged with several counts, ultimately being convicted of assault with a dangerous weapon and resisting arrest.

This case came before the Supreme Court on October 2, 2019, on a writ of certiorari from a judgment of conviction following a jury trial.[1] Before this Court, defendant argues that the trial justice erred by denying his motion for a new trial because, he alleges, the trial justice overlooked and misconceived material evidence. The parties were directed to appear and show cause why the issues raised in the case should not be summarily decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown, and we proceed to decide the case at this time. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## Facts and Travel

On February 11, 2015, defendant was charged by criminal information, in W2/15-54A, with one count of assault with a dangerous weapon, in violation of G.L. 1956 § 11-5-2 (count one), and one count of resisting arrest, in violation of G.L. 1956 § 12-7-10 (count two).[2] A jury trial commenced on October 25, 2016, and the jury heard from several witnesses, including defendant and his girlfriend. We summarize the testimony presented at trial.

Detective John Forbes (Det. Forbes) of the Hopkinton Police Department testified that, on October 11, 2014, he responded to a 911 call from defendant's longtime girlfriend, Joyce

[1] Because defendant's trial counsel failed to file a timely notice of appeal from the judgment of conviction, the public defender's office filed a petition for a writ of certiorari on defendant's behalf, to which the state had no objection.

[2] The defendant was also charged by a separate criminal information, in W2/15-70A, with one count of threatening a public official, in violation of G.L. 1956 § 11-42-4, one count of domestic assault, in violation of G.L. 1956 § 11-5-3, and one count of disorderly conduct, in violation of G.L. 1956 § 11-45-1. The charges of domestic assault and disorderly conduct were dismissed in accordance with Rule 48(a) of the Superior Court Rules of Criminal Procedure after defendant's longtime girlfriend refused subpoena service, thereby depriving the state of the direct evidence necessary to proceed to trial. The charge of threatening a public official was tried along with the counts of assault with a dangerous weapon and resisting arrest, and the jury found defendant not guilty on that count. Therefore, W2/15-70A is not before us in this case.

Kreyssig (Kreyssig), about a domestic dispute at a duplex apartment building located at 5 Side Hill Street in the town. Kreyssig told Det. Forbes that she lived with defendant in apartment 5A and that he was the only person in the apartment at that time. She also informed Det. Forbes that there was a .22–caliber rifle in the bedroom.

Detective Forbes testified that he proceeded to the common doorway of the building, knocked on the separate inside door for apartment 5A, announced himself as a Hopkinton police officer, and requested that defendant open the door. After receiving no response, Det. Forbes obtained keys to the apartment from defendant's mother and landlord, Sandra Neugent. When Det. Forbes returned to defendant's apartment, he unlocked the doorknob; but before he could unlock the deadbolt, he heard someone lock the door from the inside. Detective Forbes again announced himself as a police officer and instructed defendant to open the door. The defendant refused, stating, among other things: "I have a weapon pointed at you through this door. If you come through this door, I'm going to use it on you." Detective Forbes immediately evacuated the remaining residents in the building, took cover, and called for backup. A phalanx of police officers from the state police and the Hopkinton and Richmond police departments responded to the scene and surrounded the apartment building.

Sergeant David Bassignani (Sgt. Bassignani), the commander of the state police SWAT team, testified that, when he arrived, state troopers from the Crisis Negotiation team were communicating with defendant by cell phone. However, at some point, defendant ended all communication. Because the police believed that defendant's phone was no longer working, the SWAT team approached the house, broke the front window, and tossed a phone in a box—aptly described as a "throw phone"—into the residence. The defendant threw the box back out through the window. He then stood in the broken window, "yelling and screaming" and holding

- 3 -

an approximately three-foot-long construction level.[3] Sergeant Bassignani decided to send in the SWAT team to apprehend defendant.

The entry team breached the door and entered defendant's apartment, announcing their presence by yelling the words, "State Police." Sergeant Bassignani, who was holding a ballistic shield, entered first and immediately saw defendant, who was wielding the construction level. The defendant swung the level and struck the front of the shield, forcing it against Sgt. Bassignani's face, causing injury above his right eyebrow. The entry team swarmed defendant, who, Sgt. Bassignani testified, "was in full resist mode." He was ordered to stop resisting and get on the ground.

Corporal Thomas Chabot (Cpl. Chabot) of the state police testified that his role on the entry team was to cover Sgt. Bassignani.[4] When the entry team entered the apartment, everyone yelled "State Police[,]" as they do, according to Cpl. Chabot, "prior to entering any residence or upon making entry and crossing any threshold[.]" Although it was dark, Cpl. Chabot saw defendant lunge at Sgt. Bassignani with a long instrument, forcing the shield against Sgt. Bassignani's face. According to Cpl. Chabot, as they struggled to apprehend him, defendant was agitated and uncooperative.

The state rested its case, and defendant called Kreyssig. Kreyssig acknowledged that she had called the police after a dispute with defendant. She testified that she informed the responding officer that defendant was "just pretty miserable." Kreyssig also informed the officer that there was a gun in the apartment. But, according to Kreyssig, defendant did not know where

---

[3] A "level" is "[a]n instrument for ascertaining whether a surface is horizontal, vertical, or at a 45° angle, consisting essentially of an encased, liquid-filled tube containing an air bubble that moves to a center window when the instrument is set on an even plane." The American Heritage Dictionary of the English Language 1009 (5th ed. 2011).

[4] Corporal Chabot was a trooper at the time of the incident.

the gun was located in the apartment. She testified that she next observed the officer speak with Sandra Neugent, then enter the common doorway of the apartment building. Shortly thereafter, Kreyssig testified, additional police officers arrived at the scene. She testified that she remained at the scene for over ten hours.

The next witness, Sandra Neugent, testified that she owns the house located at 5 Side Hill Street, and that her son and Kreyssig live in apartment 5A. She testified that, on October 11, 2014, she spoke with a police officer who asked for keys to the apartment, which she provided. Although she saw the officer enter the house, she did not hear anything that happened inside.

The defendant testified last. The defendant testified that, after the couple had a disagreement and Kreyssig left the apartment, he did not hear individuals knock on the door or announce themselves as police. According to defendant, he heard someone put a key in the doorknob, and he immediately "jumped up and locked the door." He stated that the person told him not to lock the door again, but did not identify himself as a police officer, nor was defendant aware of the police presence or the numerous police vehicles outside his home.

The defendant testified that he then began receiving text messages from the state police, but he did not know why. During the exchange of text messages, they requested that he go outside, but defendant refused and stopped responding. Later that night, defendant testified, after an explosion shattered his front window, he saw the throw phone box fly through the window, and he immediately threw it back outside. Less than five minutes later, defendant testified, his door was breached, and he immediately "jumped with the level and swung."

The defendant claimed during his testimony that he did not hear anyone announce themselves as police officers, nor did he receive a warning that the police were coming through the door. After he swung the level, defendant testified, he immediately dropped it and backed

up, then he was rushed by the entry team. According to defendant, they struck him in the back of the head, tased him, and brought him down to the ground. The defendant testified that he was having difficulty breathing, and he passed out. The defendant testified that, when he regained consciousness, his hands were handcuffed behind his back, and the officers were punching him.

The jury returned a verdict of guilty on the counts of the information in W2/15-54A, and not guilty on the remaining count in W2/15-70A. The defendant filed a motion for a new trial that was heard and denied on December 6, 2016. On February 20, 2017, defendant was given a five-year suspended sentence, with probation, on count one, and a concurrent one-year suspended sentence, with probation, on count two. The defendant filed a petition for writ of certiorari, which this Court granted on May 18, 2018.

**Standard of Review**

When reviewing a motion for a new trial, this Court accords "'great weight to a trial justice's ruling' when that justice 'articulated sufficient reasoning in support of the ruling.'" *State v. Najera*, 211 A.3d 938, 943 (R.I. 2019) (quoting *State v. Kizekai*, 19 A.3d 583, 589 (R.I. 2011)). If the trial justice complied with this procedure and articulated adequate reasons for denying the motion, "his or her decision will be given great weight and left undisturbed unless the trial justice overlooked or misconceived material evidence or otherwise was clearly wrong." *State v. Rogers*, 207 A.3d 457, 461 (R.I. 2019) (quoting *State v. Phannavong*, 21 A.3d 321, 325 (R.I. 2011)).

**Analysis**

Before this Court, defendant argues that the trial justice erred in denying his motion for a new trial because, he asserts, the trial justice overlooked and misconceived material evidence concerning the charges of assault with a dangerous weapon and resisting arrest. As to the charge

- 6 -

of assault with a dangerous weapon, defendant contends that he acted in self-defense when he swung the level because he did not know that the individuals who pushed his door in were police officers.[5]  As to the charge of resisting arrest, defendant asserts that he immediately dropped the level and surrendered when he realized that the individuals in his apartment were police officers. The defendant argues that his injuries were not consistent with that of someone who resisted arrest, his apartment showed no signs of a struggle, and none of the state troopers who arrested him sustained any injuries or damage to their equipment.  We deem defendant's arguments to be without merit and therefore reject them.

Under Rule 33 of the Superior Court Rules of Criminal Procedure, "the court may grant a new trial to the defendant if required in the interest of justice."  When ruling on a motion for a new trial, the trial justice, acting as the thirteenth juror, "must (1) consider the evidence in light of the jury charge, (2) independently assess the credibility of the witnesses and the weight of the evidence, and (3) determine whether he or she would have reached a result different from that reached by the jury." *State v. Lopez*, 149 A.3d 459, 462 (R.I. 2016) (quoting *State v. Staffier*, 21 A.3d 287, 290 (R.I. 2011)).  If the trial justice agrees with the jury's verdict or if "reasonable minds could differ as to the outcome, the motion for a new trial should be denied." *Rogers*, 207 A.3d at 462 (quoting *State v. Perkins*, 966 A.2d 1257, 1260 (R.I. 2009)).  Conversely, if the trial justice finds that the state did not meet its burden on the weight of the evidence and the credibility of the witnesses, a new trial must be ordered. *E.g.*, *id.*; *State v. Peoples*, 996 A.2d 660, 666 (R.I. 2010).

In this case, the trial justice, in his bench decision denying defendant's motion for a new trial, summarized the trial testimony, exercised his independent judgment as to the credibility of

---

[5] The defendant asserted the defense of self-defense at trial, and the trial justice properly instructed the jury on self-defense and the state's burden of proof.

each witness and the weight of the evidence, and declared that he agreed with the jury's verdict. The trial justice found Sgt. Bassignani to be "very professional" and a "credible witness." The trial justice also noted that the testimony of Cpl. Chabot was consistent with that of Sgt. Bassignani. By contrast, regarding Kreyssig's testimony that defendant did not know where the gun was located in the apartment, the trial justice stated: "I don't believe what she said for a minute. All I believe is that she told * * * [Det.] Forbes that he was in there and he had access to a gun. Anything else was an afterthought after she saw the predicament that her boyfriend got himself into." Further, he stated that Kreyssig's testimony in support of defendant's "ludicrous" defense at trial was, according to the trial justice, nothing but "an effort to defend the indefensible[.]" What is more, the trial justice found that defendant's "suggestion that [he] didn't know that there were police outside [who] wanted to arrest him" was "absolutely incredible." The trial justice further acknowledged defendant's position at trial that he did not know who was on the other side of his door and did not even look outside, declaring, "I don't believe it for a second."

Finally, the trial justice concluded that he would have reached the same result as the jury:

> "In the final analysis I find absolutely no fault whatsoever with the jury's verdict in this case. All things considered, if I were trying the case, myself, without a jury, I would have come to the same conclusions; that is, except for, as I previously mentioned, I would have found him guilty of * * * the threat to public official charge. So for all these reasons, I think the jury did a good job in evaluating the evidence, the credibility of the witnesses, making a realistic common sense assessment of what went on that day, and I think they applied the law as I gave it to them, and I agree with the result[.]"

After a careful review of the record, we conclude that the trial justice complied with the directives contained in Rule 33 and articulated adequate grounds for denying the motion. We therefore afford deference to the trial justice's findings, mindful that he was a front-row observer

for all phases of the trial and was in an especially good position to assess the credibility of the witnesses and evaluate the weight of the evidence. *E.g.*, *Rogers*, 207 A.3d at 462; *State v. Baptista*, 79 A.3d 24, 29-30 (R.I. 2013). The trial justice weighed the evidence establishing that the defendant was aware of the police presence outside his apartment. He found the state's witnesses to be credible and both the defendant's and Kreyssig's testimony to be completely unbelievable. After the trial justice declared that he would have reached the same result as the jury, his analysis was complete. Therefore, we conclude that the trial justice did not err in denying the motion for a new trial.

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of conviction and remand this case to the Superior Court with our decision endorsed thereon.

| Title of Case | State v. Michael Neugent. |
|---|---|
| Case Number | No. 2017-429-M.P. (W2/15-54A) |
| Date Opinion Filed | November 14, 2019 |
| Justices | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| Written By | Associate Justice Maureen McKenna Goldberg |
| Source of Appeal | Washington County Superior Court |
| Judicial Officer From Lower Court | Associate Justice Bennett R. Gallo |
| Attorney(s) on Appeal | For State:<br><br>Lauren S. Zurier<br>Department of Attorney General<br>For Defendant:<br><br>Camille A. McKenna<br>Office of the Public Defender |